**TEXAS DEPARTMENT OF HUMAN SERVICES, Petitioner,**

v.

**Oliver OKOLI, Respondent.**

No. 10–0567.

Supreme Court of Texas.

Argued Oct. 9, 2013.

Decided Aug. 22, 2014.

David R. Richards, Richards Rodriguez & Skeith LLC, Conroe, Manuel Quinto–Pozos, Philip Durst, Deats Durst Owen & Levy, P.L.L.C., Austin, TX, for Amicus Curiae Texas State Employees Union.

Angela Veronica Colmenero, Assistant Attorney General, Beth Ellen Klusmann, Assistant Solicitor General, Office of the

Attorney General, Clarence Andrew Weber, Kelly Hart & Hallman LLP, Daniel T. Hodge, First Asst. Attorney General, David C. Mattax, Director of Defense Litigation, Office of the Attorney General, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Greg W. Abbott, Attorney General of Texas, Jonathan F. Mitchell, Solicitor General, Office of the Attorney General, Robert B. O'Keefe, General Litigation Division, Russ Wayne Harris, Health & Human Services Comm., Ruth Ruggero Hughs, William J. "Bill" Cobb III, Office of the Attorney General, Austin, TX, for Petitioner Texas Department of Human Services.

Okon J. Usoro, Okon J. Usoro, P.C., Houston, TX, Oliver Okoli, for Respondent Oliver Okoli.

Justice BROWN delivered the opinion of the Court, in which Chief Justice HECHT, Justice GREEN, Justice JOHNSON, and Justice GUZMAN joined.

The Texas Whistleblower Act protects public employees who in good faith report violations of law to an appropriate law-enforcement authority. TEX. GOV'T CODE § 554.002(a). In this case, an employee reported wrongdoing to his supervisor, who was required to forward the report to a part of the agency with outward-looking law-enforcement authority. We find this case indistinguishable from our previous cases interpreting the Act that hold reports of wrongdoing to a supervisor are not good-faith reports to an appropriate law-enforcement authority. Therefore, we reverse the court of appeals and hold the trial court lacks subject-matter jurisdiction over this whistleblower claim.

## I

Oliver Okoli was an employee of the Texas Department of Human Services (TDHS) from 1990 to 1998. At the time, TDHS was charged with administering welfare programs, such as the issuance of Medicaid benefits and food stamps. Okoli's duties included interviewing clients, determining benefits, explaining program benefits and requirements, and evaluating clients' eligibility for continuing services. Okoli was promoted on at least a couple of occasions, but was also cited several times, as far back as 1994, for faulty documentation.

According to Okoli, TDHS trained its employees in how to report illegal acts by other employees. Okoli asserts that TDHS instructed him to report such acts first to an immediate supervisor, and then up the chain of command if the first supervisor's response was unsatisfactory. This procedure was re-affirmed for Okoli when he reported a supervisor's harassment to the regional director and was told to go back and start with his immediate supervisor. In addition to the training Okoli received, TDHS also circulated an internal memorandum in 1994 entitled "Work Rule Violations." TDHS required Okoli to sign the memorandum, acknowledging that he had received it and discussed it with his supervisor.

The memorandum provided that TDHS employees are prohibited from making false statements relating to employment and job assignments, including "falsifying file dates on applications" and "intentionally making a false alteration of dates or codes on [TDHS] forms." The memorandum further provided that any employee or supervisor found to have violated, encouraged a violation of, or failed to report such a violation would "be subject to disciplinary action up to and including dismissal." Additionally, the memorandum provided that for any violation amounting to a crime under the Penal Code, "a referral to [TDHS's Office of Inspector General] will be made for possible prosecution." TDHS's Office of Inspector General (OIG)

is responsible "for the prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state," and for "enforcement of state law relating to the provision of those services." Tex. Gov't Code § 531.102(a). In the memorandum, Okoli was not given any instruction on whether he should or should not report unlawful conduct directly to the OIG.

In 1997, Okoli was assigned to a new supervisor. According to Okoli, this new supervisor often falsified dates on TDHS benefits forms to avoid delinquencies. When Okoli first complained of the fraudulent activity to the supervisor herself, she allegedly disciplined him, placing him on a "three-month corrective action plan." Okoli then reported the wrongdoing to the supervisor's supervisor. After receiving another unsatisfactory response, Okoli reported the "illegalities" even higher up the chain of command, to the Lead Program Manager. After following this course, Okoli was terminated. Okoli never reported the fraudulent activity to anyone within the OIG. Okoli pursued an administrative-grievance procedure to contest the termination, but the termination decision was sustained.

Okoli then sued TDHS under the Texas Whistleblower Act, alleging that he was terminated for reporting that his supervisor falsified dates and documents. In response, TDHS filed a plea to the jurisdiction, claiming the trial court lacked jurisdiction because Okoli failed to make a good-faith report of a violation of law to an appropriate law-enforcement authority. *See* Tex. Gov't Code § 554.0035 ("Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter."). The trial court denied TDHS's plea to the jurisdiction, and TDHS appealed.

*See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (permitting appeal from an interlocutory order that denies a plea to the jurisdiction by a governmental unit). The court of appeals affirmed, holding that the whistleblower statute did not require Okoli to raise a fact issue on the merits of the claim in order to show jurisdiction. *See Tex. Dep't of Human Servs. v. Okoli,* 263 S.W.3d 275, 281 (Tex.App.–Houston [1st Dist.] 2007, pet. granted). We reversed the court of appeals' decision and remanded the case for consideration under this Court's holding in *State v. Lueck,* 290 S.W.3d 876, 883 (Tex.2009). *Tex. Dep't of Health & Human Servs. v. Okoli,* 295 S.W.3d 667, 668 (Tex.2009) (per curiam).

On remand, the court of appeals held that because Okoli testified he was required by TDHS policy to report "up the chain of command," the supervisors were appropriate law-enforcement authorities within TDHS, and, alternatively, Okoli had a good-faith belief that he was reporting to appropriate law-enforcement authorities. *Tex. Dep't of Human Servs. v. Okoli,* 317 S.W.3d 800, 809–10 (Tex.App.–Houston [1st Dist.] 2010, pet. granted). The court of appeals again affirmed the trial court's order, and TDHS filed a second petition for review with this Court. Here, we consider whether Okoli made a report "to an appropriate law[-]enforcement authority," as defined by the Whistleblower Act, when he followed department policy and reported to his supervisors up the chain of command. Tex. Gov't Code § 554.002(b).

## II

The Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an

appropriate law[-]enforcement authority." TEX. GOV'T CODE § 554.002(a). In 1995, the Legislature amended the statute to define "appropriate law[-]enforcement authority":

[A] report is made to an appropriate law[-]enforcement authority if the authority is part of a state or local governmental entity or the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE § 554.002(b).

■■■ This Court first interpreted what it means to be an "appropriate law[-]enforcement authority" under the amended statute in *Texas Department of Transportation v. Needham*, 82 S.W.3d 314 (Tex. 2002). To satisfy this requirement, a plaintiff seeking the Act's protection must prove that the report was made to an appropriate law-enforcement authority, or that the employee had a good-faith belief that it was. *Id.* at 320. An employee's belief is in good faith if: (1) the employee believed the governmental entity qualified, and (2) the employee's belief was reasonable in light of the employee's training and experience. *Id.* at 321. While the first element is subjective, the second element is an objective one: the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a violation of law was an appropriate law-enforcement authority. *Id.* at 320–21. Whether an employee has a good-faith belief that the entity is an appropriate law-enforcement authority "turns on more than an employee's *personal* belief, however strongly felt or sincerely held." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683 (Tex.2013) (emphasis in original).

Since *Needham*, this Court has spoken several more times to what constitutes a good-faith report to an appropriate law-enforcement authority. In each instance, we have held that reports up the chain of command are insufficient to trigger the Act's protections. *See Ysleta Indep. Sch. Dist. v. Franco*, 417 S.W.3d 443, 445–46 (Tex.2013) (per curiam); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex.2013) (per curiam); *Univ. of Houston v. Barth*, 403 S.W.3d 851, 855–58 (Tex. 2013) (per curiam); *Tex. A & M Univ.– Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex.2013) (per curiam); *Gentilello*, 398 S.W.3d at 689; *Lueck*, 290 S.W.3d at 885–86. In *Gentilello*, we noted that we had consistently declined on previous occasions "to remove the objective element and protect internal reports to workplace supervisors who lacked the Act's specified powers." 398 S.W.3d at 683. The facts of Okoli's case do not merit a departure from this precedent.

### III

■■■ The 1994 memorandum regarding how TDHS employees should report wrongdoing includes a purported assurance that violations of the Penal Code would be reported to OIG. TDHS does not dispute that its OIG is an appropriate law-enforcement authority under the Whistleblower Act, as it is charged with investigating and enforcing violations of law or fraud: "The commission's office of inspector general is responsible for the prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state...." TEX. GOV'T CODE § 531.102(a). However, because Okoli did not make a report directly to the OIG, we must consider whether the reports to Okoli's supervisors—who work to administer TDHS programs—satisfy the Act's requirements.

When an employee reports wrongdoing internally with the knowledge that the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting "*to* an appropriate law[-]enforcement authority." TEX. GOV'T CODE § 554.002 (emphasis added). We have made this clear in previous decisions interpreting the "appropriate law[-]enforcement authority" requirement. In both *Needham* and *Lueck*, for instance, we denied Whistleblower Act protection to Texas Department of Transportation (TxDOT) employees who reported violations of law to supervisors within the department because those supervisors lacked appropriate law-enforcement authority. *Lueck*, 290 S.W.3d at 885–86 (holding the head of a division within TxDOT could not regulate or enforce federal traffic data-collection regulations); *Needham*, 82 S.W.3d at 320–21 (holding TxDOT could only internally discipline an employee who violated drunk-driving laws).

Importantly, in both *Needham* and *Lueck*, the whistleblowers had been made aware that their supervisors lacked law-enforcement authority. In *Lueck*, an e-mail revealed that the whistleblower knew his supervisor would have to refer the violation elsewhere. We held that this conclusively established that the employee could not have formed a good-faith belief that his supervisor was an appropriate law-enforcement authority. *Lueck*, 290 S.W.3d at 885–86; *see also Needham*, 82 S.W.3d at 321 (holding that employee's participation in TxDOT's internal disciplinary process was insufficient to support finding of good faith belief that he reported to proper authority).

In this case, for Okoli's reports of wrongdoing to have reached an appropriate law-enforcement authority, Okoli's supervisors would have had to forward them to OIG for prosecution. Further, like the e-mail in *Lueck*, the 1994 memorandum in this case spells out for Okoli that his supervisor would have to refer his report elsewhere. While the TDHS memo requires employees to report all work-rule violations, it also informs employees that if the violations constitute a violation of the Penal Code, "a referral to OIG will be made for possible prosecution." Like the employees in *Needham* and *Lueck*, Okoli did not report to an appropriate law-enforcement authority, nor could he have had a good-faith belief that he did so.

We reaffirmed our *Lueck* holding in *Barth* and *Gentilello*. See *Barth*, 403 S.W.3d at 857–58; *Gentilello*, 398 S.W.3d at 687. *Barth*, which we decided less than a year ago, is particularly analogous to this case. In *Barth*, a university professor reported violations of law by his college's dean to the university's general counsel, chief financial officer, internal auditor, and associate provost. 403 S.W.3d at 853. We held that because "none of the four people that Barth reported to regarding alleged violations of the Penal Code . . . could have investigated or prosecuted criminal law violations against third parties," he failed to satisfy section 554.002(b) of the Texas Government Code. *Id.* at 857–58. Barth also reported the violations to the university's police department, but not until after alleged retaliatory acts against him had already occurred. *Id.* at 857. We pointed out that Barth's report to the police may have been sufficient had it preceded the retaliatory action. *Id.*

In *Gentilello*, we held that a medical-school faculty member who oversaw internal compliance with federal regulations did not have "law-enforcement authority status" for reports of violations of federal laws. 398 S.W.3d at 686–87 ("A supervisor looking into and addressing possible noncompliance in-house bears little resemblance to a law-enforcement official for-

mally investigating or prosecuting the non-compliance on behalf of the public, or a regulatory authority charged with promulgating or enforcing regulations applicable to third parties generally."). In that case, the whistleblower acknowledged that the faculty member had only inward-looking authority and would have to refer suspected illegality "to whoever is in charge of enforcing the law." *Id.* at 688.

In spite of this line of authority, Okoli urges us to find his up-the-chain-of-command report satisfies the Act. This case can be distinguished from *Barth* and the others, Okoli insists, because TDHS had developed a process for collecting criminal reports within the agency: employees were trained to refer wrongdoing to department supervisors up the chain of command, who would then forward possible criminal violations to the OIG.

As to the training Okoli received, we have rejected the notion that a departmental policy requiring employees to report wrongdoing to their supervisors is sufficient to form a good-faith belief. The plaintiffs in *Barth, Gentilello,* and *Needham* were complying with similar instructions when they made their reports. *See Barth,* 403 S.W.3d at 857; *Gentilello,* 398 S.W.3d at 688; *Needham,* 82 S.W.3d at 314.

We have rejected this argument even when those who receive the report are also administratively obligated to report the alleged violations to an appropriate law-enforcement authority. We held that Barth's reports were insufficient, even though he argued that in reporting the violations as he did, he was complying with the university's internal administrative policy, and that university policy further required all the administrators who received such reports to forward them to the university police. *See Barth,* 403 S.W.3d at 857–58. Similarly, we did not find a good-faith belief that the report made in *Needham*

was made to an appropriate law-enforcement authority when the plaintiff there believed it would be forwarded to another entity that could prosecute the alleged violation. 82 S.W.3d at 321. Because these arguments are directly analogous to those Okoli makes in this case, we again hold that a departmental process that channels reports of wrongdoing to appropriate law-enforcement authorities does not make every report one that is "*to* an appropriate law[-]enforcement authority." *See* Tex. Gov't Code § 554.002(b) (emphasis added).

The fact that the OIG is an internal division of TDHS does not change the analysis. There is no reason why a TDHS supervisor is any more likely to pass on a report to OIG than the university administrators in *Gentilello* were to pass on reports of violations of federal law to federal authorities, or the administrators in *Barth* were to pass on reports of state-law offenses to the police.

In so holding, however, we decline, as we did in *Gentilello,* to say that no internal report could ever merit protection under the Act. *See* 398 S.W.3d at 686. In *Gentilello,* we posited this hypothetical:

> We do not hold that a Whistleblower Act report can *never* be made internally. A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large. UTSW concedes in its briefing that "some Whistleblower Act reports may be made internally—for instance, a report of a violation of the Texas Penal Code to a supervisor who is also a policeman and, as such, is authorized to investigate violations of criminal law."

But here, as in *Needham* and *Lueck,* the supervisor lacked any such power to enforce the law allegedly violated or to investigate or prosecute criminal violations against third parties generally.

*Id.* (emphasis in original).

The whistleblower in the *Gentilello* hypothetical is reporting a violation of law to a police officer. Whether a member of the narcotics division or the internal-affairs division, a police officer is authorized to investigate violations of law and to cite or arrest persons suspected of committing such violations. Okoli's supervisors, like the supervisors and administrators in *Gentilello, Moreno, Barth, Needham,* and *Lueck,* have no such authority.

To satisfy the Act's requirements, a report must be made to (1) an individual person who possesses the law-enforcement powers specified under the Act, or (2) someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers. This would include someone within an OIG or even an OIG within the same agency as the whistleblower, so long as the OIG has outward-looking law-enforcement authority. It would not include someone, like Okoli's supervisors, who does not work within a governmental arm so charged and would have to refer the report of wrongdoing to such an arm.

\*     \*     \*

Because Okoli neither reported the alleged violations he witnessed to an appropriate law-enforcement authority nor in good faith could have believed he had, he is not entitled to the protections of the Whistleblower Act. Tex. Gov't Code § 554.002(a). Therefore, we reverse the court of appeals' judgment and dismiss Okoli's claims for lack of jurisdiction.

Justice DEVINE filed a dissenting opinion, in which Justice WILLETT and Justice LEHRMANN joined.

Justice BOYD did not participate in the decision.

Justice DEVINE, joined by Justice WILLETT and Justice LEHRMANN, dissenting.

The Texas Whistleblower Act prohibits a governmental entity from suspending or terminating a public employee, who in good faith reports another public employee's violation of law to an appropriate law enforcement authority. Tex. Gov't Code § 554.002(a). "[A] report is made to an appropriate law enforcement authority if the authority is a part of a ... governmental entity ... that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b). Although the agency to whom Okoli reported the wrongdoing clearly possesses the powers enumerated above, the Court nevertheless concludes that Okoli's report was not made to an appropriate law enforcement authority because the individuals in that agency to whom he reported did not themselves possess these powers. The Court's focus on individual authority rather than the authority of the governmental entity receiving the report is a departure from prior case law, and its opinion parses the whistleblower statute so finely as to eliminate any good-faith standard. Because statutory good faith has no meaning under the Court's writing, I dissent.

Since 2002, we have issued eight opinions shaping the contours of a good-faith report to an "appropriate law enforcement authority." *Ysleta Indep. Sch. Dist. v. Franco,* 417 S.W.3d 443 (Tex.2013) (per curiam); *Canutillo Indep. Sch. Dist. v.*

*Farran,* 409 S.W.3d 653 (Tex.2013) (per curiam); *Univ. of Hous. v. Barth,* 403 S.W.3d 851 (Tex.2013) (per curiam); *Tex. A & M Univ.–Kingsville v. Moreno,* 399 S.W.3d 128 (Tex.2013) (per curiam); *Univ. of Tex. Sw. Med. Ctr. v. Gentilello,* 398 S.W.3d 680 (Tex.2013); *City of Elsa v. Gonzalez,* 325 S.W.3d 622, 624 (Tex.2010) (per curiam); *State v. Lueck,* 290 S.W.3d 876 (Tex.2009); *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314 (Tex.2002). In each of these cases, the Court ruled against the whistleblower, observing that internal agency reports to a supervisor were not whistleblower reports to an appropriate law enforcement authority because the agency itself generally lacked authority to investigate or prosecute criminal conduct or otherwise regulate conduct outside the agency involved. In short, the governmental entity receiving the report was not an appropriate law enforcement authority because it was powerless to act on the report beyond matters of internal discipline.

For example, in *Texas Department of Transportment v. Needham,* a TxDOT employee reported to two TxDOT supervisors and a human resources employee that another TxDOT worker was driving drunk during a work assignment. 82 S.W.3d at 316. We reasoned that an authorized law enforcement authority was a governmental entity with the power to regulate outside itself. We further concluded that TxDOT was not such an entity because it lacked "authority to regulate under or enforce the Texas' driving while intoxicated laws" or "to investigate or prosecute these criminal laws." *Id.* at 320. Similarly, *State v. Lueck* involved another TxDOT employee who claimed that an email to his supervisor was an appropriate report, and again we held that the plaintiff did not allege a whistleblower claim because the report to TxDOT was not made to an authorized law enforcement authority. 290 S.W.3d at 885–86. Thereafter, several cases, decided in 2013, elaborated further on the statute's requirement of a good-faith report to an appropriate law enforcement authority. *See Barth,* 403 S.W.3d 851; *Moreno,* 399 S.W.3d 128; *Gentilello,* 398 S.W.3d 680.

In *Gentilello,* a professor of surgery at a state medical school complained to his supervisors that medical residents were not being supervised properly. 398 S.W.3d at 682. The professor subsequently sued his employer, alleging retaliation for his report. *Id.* We concluded that because the professor's supervisors could only ensure internal compliance, and not regulate under or enforce the law against third parties outside the medical school, the plaintiff could not pursue his claim. *Id.* at 687–88. We explained that an authorized law enforcement authority was a governmental entity that possessed outward-looking enforcement or regulatory powers but that an employee's internal report to such an entity could, under the appropriate circumstances, still be a good faith report to an authorized law enforcement authority:

> As we have held, an appropriate law-enforcement authority must be actually responsible for regulating under or enforcing the law allegedly violated. It is not simply an entity responsible for ensuring internal compliance with the law allegedly violated.

> \*     \*     \*

> The upshot of our prior decisions is that for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties.

> \*     \*     \*

We do not hold that a Whistleblower Act report can *never* be made internally.

A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large.

*Id.* at 685–86.

Two *per curiam* opinions promptly followed *Gentilello*. *Moreno* held that a plaintiff's internal report to her supervisors cannot comply with the Act "if the supervisor's power extends no further than ensuring the governmental body *itself* complies with the law." 399 S.W.3d at 130 (quoting *Gentilello*, 398 S.W.3d at 689). *Barth* similarly involved another purely internal report within a university alleging "questionable accounting practices" and the like. 403 S.W.3d at 853. We held that Barth's report (even if he alleged a violation of law) was not sufficient because there was no evidence, given Barth's training and experience, of his objective good-faith belief that he was reporting violations of law to an entity that could have enforced, investigated, or prosecuted similar violations against third parties. *Id.* at 857–58.

The above authorities make clear that the Whistleblower Act does not protect a public employee who makes a purely internal report to an entity that does not have authority to enforce or regulate under the law against those outside the employee's agency. But when a report is made internally to an entity that possesses the authority to enforce or investigate violations by others than just its own employees, the report can form the foundation for a whistleblower complaint if there is evidence of good faith.

Okoli's former employer, the Texas Department of Human Services (TDHS), possesses such outward-looking authority. It has its own Office of Inspector General (OIG) with specific statutory authority to enforce and investigate violations of law, not just by TDHS employees but by others outside the agency as well. *See* TEX. GOV'T CODE § 531.102. It has its own regulations in the *Texas Administrative Code* which codify its responsibilities "for the enforcement of state law relating to the provision of health and human services in Medicaid and other HHS programs." 1 Tex. Admin. Code § 371.11(a). And, it possesses specific statutory authority to conduct civil and criminal investigations, not only of TDHS personnel, but also of those outside the agency. TEX. GOV'T CODE §§ 531.102, .1021, .103; *see also* Tex. Admin. Code §§ 371.11, .1603. Assuming that Okoli's report to an entity possessing law enforcement authority was not alone sufficient to invoke the protections of the Whistleblower Act, the issue remains as to whether his report was nevertheless in good faith.

Even when a plaintiff fails to report directly to an appropriate law enforcement authority, the plaintiff is not without recourse. The Act protects public employees who believe in good faith that their reports were to an authorized law enforcement authority, even though their belief may turn out to be incorrect. To determine "good faith," we have fashioned a two-part test with both subjective and objective components. *Needham*, 82 S.W.3d at 321. This good-faith test requires that the employee demonstrate that (1) he or she believed the report was to an authorized law enforcement authority and (2) such "belief was reasonable in light of the employee's training and experience." *Id.* Under the subjective test, the employee must think he or she is reporting to an authorized law enforcement authority. Under the objective test, the belief cannot be absurd; it must be one that would be shared by a reasonable employee. *See id.* at 320–21.

In *Gentilello,* we held that, given his training and expertise, the plaintiff should have known that his reports were not made to an appropriate law enforcement authority because he knew his supervisor could only ensure internal compliance with the law. 398 S.W.3d at 688. Similarly, the plaintiff in *Moreno* demonstrated that her supervisor and agency were charged simply with ensuring internal compliance and not with external enforcement of the law. 399 S.W.3d at 129–30. She could therefore not show a good-faith belief that she had reported to an appropriate law enforcement authority.

*Barth* involved a University of Houston professor who reported questionable accounting practices and mishandled funds by a university dean to the university's CFO, general counsel, an internal auditor, and an associate provost. 403 S.W.3d at 853. We concluded the Act did not protect Barth, who was also trained as an attorney, because the individuals to whom Barth reported were charged only with the university's internal regulation and lacked the traditional, outward-looking law enforcement authority required by the Act. *Id.* at 857–58. The case is perhaps most similar to Okoli's in that the University, like TDHS, has an internal law-enforcement department—the university police. We concluded, however, that "given Barth's legal training and experience as a practicing attorney," there was no evidence of "the objective component of the good-faith test for reporting a violation of law to an appropriate law enforcement authority." *Id.* at 858. Barth is therefore factually distinguishable from this case in that Okoli's training and experience support rather than negate his good-faith belief that his reports were to an authorized law enforcement authority.

Two key pieces of evidence establish at least a fact question on the issue of Okoli's subjective-and-objective reasonableness as compared to a reasonable employee with similar training and experience. First, Okoli presented documentary evidence that, as part of his job, he received specific training that his chain of command could and would determine to whom to refer his complaint within the agency, including to those within the agency with civil and criminal law authority to act within or outside the agency. Okoli further presented evidence of a prior unrelated incident in which he failed to follow his training when making a report of wrongdoing and was reprimanded to follow agency protocol. There is evidence then of an internal agency policy establishing a mandatory and exclusive avenue to reach an outward-looking, but also internal, law enforcement authority and that reports made via this established policy could reasonably be considered to be direct reports to the enforcement arm of the state agency. In short, there is evidence that Okoli's chain of command functioned as an intake clerk for the OIG, thus substantiating Okoli's good-faith belief that a report to his supervisor under institutional protocol was in fact a report to the OIG. Second, there is no dispute but that the OIG was the appropriate place for such complaints.

This case is quite old, but procedurally it remains an infant, frozen in time by the State's preliminary plea to the jurisdiction. Although the trial court denied that plea almost eight years ago, the State appealed, and the State's appeal has bounced between the court of appeals and this Court ever since. The court of appeals has twice affirmed the trial court's interlocutory order denying the jurisdictional plea, and this is our second look at the plea. Such a plea may be granted only if the plaintiff's pleadings "affirmatively negate the existence of jurisdiction" or the jurisdictional facts are not in dispute. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). Further, a court

must indulge every reasonable inference and resolve any doubts in favor of the party resisting the plea. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). Under that standard and this record, the trial court did not err in denying the State's preliminary plea.

It may be that a court or jury will ultimately find Okoli's reliance on his training and experience unconvincing or his purported belief in what he was told objectively unreasonable. But, for purposes of evaluating the jurisdictional facts, I cannot agree with the Court that there is no evidence of Okoli's good faith. In *Gentilello*, we left open the door that good faith might bridge the gap between internal agency reports and reports to an appropriate law enforcement authority in limited circumstances. Today, the Court closes that door, and with it any meaning the Legislature might have intended for "good faith."

Because there is some evidence that the defendant did require and train Okoli to submit whistleblower claims to his chain of command for investigation, regulation, enforcement, or prosecution by the OIG, I conclude there exists a fact question of Okoli's good faith, which supports the lower courts' decisions to deny the plea to the jurisdiction. I would accordingly affirm the court of appeals' judgment and allow the case to proceed in the trial court. Because the Court instead renders judgment for the State on its jurisdictional plea, I respectfully dissent.